USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3-15-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HISHAM A. KHALEEL,

     **Plaintiff,**

-against-

HEIGHTENED SECURITY SVC INC,

     **Defendant.**

15-cv-01387 (ALC) (RLE)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Before this Court is Defendant's motion for summary judgment. For the reasons that follow, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

### I. Factual Background

The following facts are viewed in the light most favorable to the non-moving party. *See Mitchell v. City of N.Y.*, 841 F.3d 72, 75 (2d Cir. 2016) (citing *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016)).

During the time period relevant to this action, Plaintiff worked as a uniformed security guard for Defendant Heightened Security, Inc ("Heightened Security"). Declaration of James Harris at 2 (ECF No. 63) ("Harris Decl."). Plaintiff worked at the East River Plaza Mall along with twenty-five to twenty-seven other guards. *Id.* at 3.

During the course of his employment, Heightened Security allegedly discriminated against Plaintiff on the basis of his Middle Eastern race; male sex; Egyptian national origin; and Muslim religion. Complaint at 3; 9 (ECF No. 2) ("Compl."). Construed liberally, this discrimination took the following forms. Heightened Security gave Plaintiff harder duties than

**COPIES MAILED**

those given to female officers. *Id.* at 4. The company also harassed and intimidated him on the basis of his sex and created a hostile work environment. *Id.*

Additionally, Heightened Security paid Plaintiff less than similarly situated employees, denied him pay raises, reduced his hours, and failed to provide him with training opportunities or promotions, despite doing offering training, additional hours, and promotions to newer employees. *Id.* at 3-4; New York State Division of Human Rights ("NYSDHR") Complaint at 11 (ECF No. 2) ("NYSDHR Compl.").[1]

Heightened Security moreover failed to accommodate Plaintiff's religious practices by denying him the ability to pray during breaks. *Id.* at 4. In addition, Heightened Security did not accommodate his disability, which appears to entail a sudden illness, dental and medical appointments, and his needs during difficult work circumstances and bad weather. *Id.* at 9-10.

Further, Heightened Security issued frivolous discipline tickets on January 16, 2014 and March 27, 2014. *Id.* at 3; NYSDHR Compl. at 11. Plaintiff appears to allege that his supervisors would not have issued these write-ups if he belonged to their racial groups (African-American and Hispanic). *Id.* In addition to racial biases, he contends that the January 16, 2014 ticket was issued in retaliation for his report of dangerous ice conditions in the mall parking lot. *Id.* With respect to the March 27, 2014 ticket, he alleges the ticket was improper because he had called to inform his office that he would be late due to a paperwork emergency at the DSS. *Id.*

Plaintiff filed a claim for discrimination with the NYSDHR on April 4, 2014. *See* NYSDHR Compl. at 8-12. On that date, he also filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *See id.* at 13. The EEOC issued a Right to Sue letter on November 25, 2014.

---

[1] Plaintiff contends that Defendant engaged in failure to promote and "violations of BFQOC." Compl. at 3. It is unclear what "BFQOC" refers to. The Complaint provides no further elucidation.

2

On April 10, 2014, Plaintiff's employment was terminated. Plaintiff alleges his employment was terminated in response to his complaints regarding discrimination. *Id.* at 4.

## II. Procedural Background

Plaintiff filed a *pro se* complaint commencing the instant action on February 21, 2015. The Complaint alleges violations of Title VII of the Civil Rights Act for discrimination based on race, color, sex, national origin, and religion, as well as retaliation; the Age Discrimination in Employment Act ("ADEA"); and the Americans with Disabilities Act ("ADA"). *Id.* at 3.

Defendant filed a Motion for Summary Judgment on March 31, 2017. ECF Nos. 62-64 ("Def Mem"). Plaintiff has not opposed the Motion. On January 18, 2018, this Court issued an order to show cause, by January 31, 2018, why this motion should not be considered fully briefed. ECF No. 66. As of this date, Plaintiff has not responded.

Accordingly, the Court deems this motion fully briefed.

## **LEGAL STANDARD**

Summary judgment is appropriate if there is "no genuine dispute as to any material fact." Fed. R. Civ. P. Rule 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the initial burden of demonstrating the absence of a question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Then, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The party opposing summary judgment "may not rely on mere speculation or conjecture" as "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Moreover, factual disputes that are "irrelevant" or "unnecessary" are insufficient; "[o]nly

3

disputes over facts that might affect the outcome of the suit under the governing law" can defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248. In making this determination, the Court must draw all inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a plaintiff proceeds pro se, the court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, "even pro se plaintiffs must offer some evidence that would defeat a motion for summary judgment." *Kendall v. Cuomo*, No. 12-3438, 2017 WL 4162338, at *2 (S.D.N.Y. Sept. 19, 2017) (citing *Saldana v. Local 32B-32J Serv. Emps. Int'l Union*, No. 03-1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005)).

## DISCUSSION

### I. Title VII Discrimination Claims

Title VII of the Civil Rights Act of 1964 ("Title VII") "forbids employment discrimination on the basis of 'race, color, religion, sex, or national origin.'" *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 119 (2d Cir. 2008) (quoting 42 § U.S.C. 2000e-2(a)). Claims under Title VII "are subject to the *McDonnell Douglas* burden-shifting standard." *Kirkland*, 760 F.3d at 225; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under *McDonnell Douglas*, to state a prima facie case of discrimination "a plaintiff must proffer evidence that (1) he belongs to a protected group; (2) he was qualified for his position; (3) his employer took an adverse action against him; and (4) the adverse action occurred in

circumstances giving rise to an inference of [prohibited] discrimination." *Kirkland*, 706 F.3d at 225.

With respect to failure to promote claims, the plaintiff must also show that he "applied and was qualified for a job for which the employer was seeking applicants," he was "rejected for the position," and "the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802)). Further, the plaintiff must allege that he "applied for a specific position," and not merely that "on several occasions [he] generally requested promotion." *Id.* at 710.

Once a plaintiff makes a prima facie showing, the burden shifts to the defendant to provide a "legitimate, non-discriminatory reason for its actions." *Kirkland*, 760 F.3d. at 225 (citing *McDonnell Douglas*, 411 U.S. at 802). This burden is "one of production, not persuasion." *Isaac v. City of N.Y.*, 701 F. Supp. 2d 477, 487 (S.D.N.Y. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

If the defendant provides a legitimate, non-discriminatory justification, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for [prohibited] discrimination." *Kirkland*, 760 F. 3d at 225. At this stage, mere allegations are insufficient. The plaintiff must submit "admissible evidence [that] show[s] circumstances that would be sufficient to permit a rational finder of fact to infer that [the employer's] employment decision was more likely than not based in whole or in part on discrimination." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

### A. Race and National Origin Discrimination

Even construed liberally, Plaintiff fails to state a prima facie case of race or national origin discrimination. He provides no facts from which this Court could infer that the alleged acts of discrimination—such as assignment of heavier duties, denials of trainings, reduction of hours, and pay disparities—were committed because of his race or national origin. Plaintiff's failure to promote claim fails for the additional reason that he did not allege that he was qualified for a supervisory position or that he applied for a specific position.

Even assuming *arguendo* that Plaintiff stated a prima facie case, Defendant has either rebutted Plaintiff's allegations of adverse employment actions or provided race-neutral reasons for such actions. Defendant avers that Plaintiff could not have been assigned "heavier" jobs, as all security guards perform the same job duties. Harris Decl. at 5. Moreover, Plaintiff did not receive less pay than his fellow guards. Plaintiff was paid $9 an hour—the same wage as nine security officers, more than thirteen security officers, and less than only four security officers. *Id.* at 6; *see* Wage Chart (ECF No. 63-7). Additionally, Plaintiff's hours were reduced at his own request. Harris Decl. at 7; Request to Reduce Hours (ECF No. 63-11). With regards to Plaintiff's failure to promote claim, Defendant avers that Plaintiff never requested supervisor training or inquired about a supervisor position.

Finally, Defendant contends that Plaintiff was terminated for a legitimate, non-discriminatory reason: his routine lateness. Out of forty-eight scheduled shifts between December 25, 2013 and March 30, 2014, Plaintiff was late sixteen times. Harris Decl. at 3; Tardy Record (ECF No. 63-4).

Plaintiff has not adduced any evidence to permit this Court to find that that Defendant's explanations are a pretext for discrimination.

## B. Sex Discrimination

Plaintiff appears to make two claims of sex discrimination: (1) Defendant gave easier duties to female officers and (2) Heightened Security was a hostile work environment.

### i. Disparate Treatment on Basis of Sex

The "central focus of a court confronted with a Title VII sex discrimination case is whether the employer is treating 'some people less favorably than others because of their . . . sex.'" *Sweeney v. Research Foundation of State Univ. of N.Y.*, 711 F.2d 1179, 1184 (2d Cir. 1983) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

First, construed liberally Plaintiff states a prima facie case of sex discrimination because he alleges that he was assigned different and more difficult duties than female officers. However, Defendant rebutted this claim by averring that all guards, male and female, perform the same duties. Indeed, Defendant asserts, "there is no way to provide a lighter duty for females as opposed to males since both genders have the same job duties." Harris Decl. at 5. Plaintiff has not rebutted Defendant's claims.

### ii. Hostile Work Environment

A "hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). This standard "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21

(1993)). Unless an isolated incident is "very serious," generally "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal citations and quotation marks omitted).

Even with the special solicitude afforded to *pro se* complaints, Plaintiff here does not state a hostile work environment claim. Plaintiff does not articulate who committed the alleged sexual harassment, when the harassment occurred, or what it consisted of. Additionally, Defendant avers that "Plaintiff never made any complaints about sexual harassment to management." Harris Decl. at 5. To the extent that the harassment refers to the alleged modes of discrimination discussed above, Defendant has provided a legitimate, non-discriminatory reasons for such actions.

### C. Religious Discrimination

To state a prima facie case of religious discrimination, Plaintiff must show that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer[] of this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement." *Knight v. Conn. Dep't of Public Health*, 275 F.3d 156, 167 (2d Cir. 2001) (citing *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show it "could not accommodate the employees' religious beliefs without undue hardship." *Id.*

Plaintiff alleges that Defendant discriminated against him on the basis of his religion, Islam, by denying him an accommodation of allowing him to pray during breaks. However, Plaintiff does not allege that he informed his employer of this conflict. Further, he does not allege that he was disciplined for failing to comply with the conflicting employment requirement. Accordingly, he does not state a prima facie case.

8

Assuming *arguendo* that Plaintiff had satisfied his prima facie burden, Defendant has adduced evidence that it did, in fact, accommodate Plaintiff's religious beliefs. For instance, Defendant accommodated Plaintiff's request to have Fridays off for religious reasons. Harris Decl. at 5; Work Schedule (ECF No. 63-3). However, Defendant does not respond to Plaintiff's allegation that Heightened Security denied him the ability to pray during breaks.

Nevertheless, Plaintiff ultimately fails to satisfy his burden because he has produced no evidence in support of his conclusory claims.

### D. Retaliation

To establish a prima facie claim of retaliation, a plaintiff must adduce "evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII[], [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action." *Kessler v. Westchester Cnty. Dept. of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (quoting *Cifra v. General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001). Causation "can be shown by timing: protected activity followed closely in time by adverse employment action." *Vega v. Hemstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

Moreover, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* This Circuit has clarified that "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Group, LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

If a plaintiff alleges a prima facie case of retaliation, the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Then, "the presumption of retaliation dissipates" and the plaintiff must show that this reason was merely a pretext. *Id.*

Here, Plaintiff alleges that he engaged in a protected activity by complaining of discrimination to the NYSDHR on April 4, 2014. He further alleges that Defendant took an adverse action by firing him on April 10, 2014, and that Defendant terminated him because of his complaints of discrimination. Thus, Plaintiff has made a prima facie case of retaliation.

However, Defendant has articulated a legitimate, non-retaliatory reason for the termination. Defendant avers that Plaintiff was terminated due to repeated lateness and violations of company policies. Harris Decl. at 4-5. As discussed *supra*, Plaintiff was late more than fourteen times. *Id.* at 6. Further, on January 16, 2014, Plaintiff was photographed inside of a Target store while he was not on an authorized break, in violation of Defendant's Zero Tolerance Policy on abandoning posts. *Id.*; *see* Zero Tolerance Policy (ECF No. 63-9); Photograph (ECF No. 63-10). Additionally, Plaintiff was within his six-month probationary period. *Id.* at 5.

Moreover, Defendant had planned to confront Plaintiff about his violations *before* Plaintiff complained of discrimination. The disciplinary meeting was initially scheduled for April 3, 2014—a day before Plaintiff filed his human rights complaint. Harris Decl. at 4. The meeting only occurred after Plaintiff filed the complaint because Plaintiff failed to appear at the April 3rd meeting. *See id.* at 4-5.

Plaintiff has not adduced any evidence to show that Defendant's proffered reasons are pretextual. Thus, his retaliation claim must fail.

Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII claims is GRANTED.

## II. ADEA Claim

The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Wray v. Edward Blank Associates, Inc.*, 924 F. Supp. 498, 501 (S.D.N.Y. 1996) (quoting 29 U.S.C. § 623(a)(1)). Courts analyze ADEA claims under the same *McDonnell Douglas* framework used in Title VII cases. *See Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). Thus, to make a prima facie case of age discrimination, Plaintiff must show "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000)). An individual is within the protected age group if he is over forty years old. 29 U.S.C. § 631(a)).

Here, Plaintiff has failed to state a prima facie case for discrimination. Plaintiff has satisfied the first prong because he was more than forty years old at the time of the alleged discrimination. Yet he does not allege that any specific actions were taken because of his age. Thus, Plaintiff's allegations do not give rise to an inference of discrimination.

Regardless, as discussed *supra*, Defendant has provided legitimate, non-discriminatory reasons for the alleged adverse employment actions.

Accordingly, Defendant's motion for summary judgment on Plaintiff's ADEA claim is GRANTED.

## III. ADA Claim

The ADA "provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . ." *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149 (2d Cir. 1998) (quoting 42 U.S.C. § 12112(a)). Under the ADA, a disability is: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* at 150 (quoting 42 U.S.C. § 12102(2)).

An employer may violate the ADA by committing an adverse employment action or through failing to provide a reasonable accommodation. To state a prima facie case for adverse employment actions under the ADA, a plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

To state a prima facie case for failure to accommodate, a plaintiff must demonstrate that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* at 125-26.

In both types of discrimination claims, "the plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment." *Id.* at 126 (citations and quotation marks omitted).

Here, Plaintiff has not made a prima facie case of discrimination. It is difficult to ascertain what disability Plaintiff claims to have. Plaintiff variously describes that his work circumstances made him ill (Compl. at 3); employers failed to accommodate his "religious and also social SVC/HRA accommodations;" (*id.*) Heightened Security denied him leave-time or other benefits for his "sudden illness" and "medical and dental and even social services appointments;" (*id.* at 4) and that he was forced to work in difficult circumstances of "bad weather" and "no mercy." *Id.* at 9. Even with the special solicitude afforded to pro se litigants, Plaintiff has failed to establish that he has a disability within the meaning of the ADA.

Assuming Plaintiff did allege a disability within the statute, he has failed to allege that his purported disability was a cause of any adverse employment action. Moreover, Plaintiff has not adduced any evidence of an accommodation that would allow him to perform the essential functions of his employment. And even assuming Plaintiff made a prima facie case, as discussed *supra* Defendant has proffered legitimate, non-discriminatory reasons for any adverse employment actions.

Accordingly, Defendant's motion for summary judgment on all claims is GRANTED. The clerk of court is kindly requested to terminate the motion at ECF No. 62.

**SO ORDERED.**

Dated: March 15, 2018
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**